UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VABLIN KOJIMA,<br><br>                            Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF ALABAMA, et al.,<br><br>                           Defendants. | Case No.: 14-cv-1957-JLS-DHB<br><br>**ORDER (1) DENYING PLATINIFF'S CONTINUANCE MOTION; (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 41, 43, 53) |

Presently before the Court are Plaintiff's Cross-Motion for Summary Judgment, ("Pl.'s MSJ") (ECF No. 41) and corresponding support and opposition briefs; Defendants Blue Cross and Blue Shield of Alabama's ("BCBS") and Vulcan Materials Company Group Health Care Plan's (together, "Defendants") Motion for Summary Judgment, ("Defs.' MSJ") (ECF No. 43) and corresponding support and opposition briefs; Defendants' Supplemental Brief re Pending Summary Judgment Motions, ("Defs.' Suppl. Br.") (ECF No. 55); and Plaintiff's *Ex Parte* Motion to Continue the Date for Filing of Supplemental Brief by Additional Thirty Days, ("Cont. Mot.") (ECF No. 53). Having considered the parties arguments and the law, the Court rules as follows.

/ / /

## PROCEDURAL BACKGROUND

Both motions for summary judgment were initially set for hearing at 1:30 p.m. on October 20, 2016; however, on October 6, 2016 the Court vacated the hearing and requested supplemental briefing from both parties "addressing the issue whether Plaintiff Kojima or the primary insured received the relevant EOBs electronically or by United States mail or any other means." (October 6, 2016 Order 1, ECF No. 49.) On October 19, Plaintiff submitted an *Ex Parte* Motion requesting forty-five additional days in which to file a supplemental brief because "counsel for Plaintiff ha[d] been unable to make contact or communicate with Plaintiff." (Pl.'s *Ex Parte* Mot. to Continue the Date for Filing of Suppl. Br. by Forty-Five Days 1, ECF No. 50.) The Court granted the motion the following day. (ECF No. 50.)

Plaintiff now again requests an extension of time because "counsel for Plaintiff has remained unable to make contact or communicate with Plaintiff." (Cont. Mot. 1.) However, Defendants have filed a Supplemental Brief that clarifies the issue on which the Court requested supplemental briefing, and Plaintiff tacitly concedes that this information should be sufficient for the Court to proceed with the pending cross-motions for summary judgment. (*Id.* at 2 ("Plaintiff reiterates that Defendants' counsel should have evidence of whether or not BCBS of Alabama, electronically or via US mail, transmitted the relevant EOBs . . . to its participant, Patrick Kojima, or Plaintiff, its beneficiary."); *see also id.* ("Surely, if Defendants cannot provide the answer that the Court seeks then it would not be prejudicial to the parties or to the Court to allow Plaintiff's counsel 30 additional days to make contact with Plaintiff . . . .").) Given the foregoing, the Court **DENIES** Plaintiff's Continuance Motion and takes the cross motions for summary judgment under submission without oral argument pursuant to Civil Local Rule 7.1(d).

## FACTUAL BACKGROUND

### I. Plaintiff and Her Surgical History

Plaintiff is a 54-year-old woman with a history of lower back pain who is a covered dependent under the BCBS healthcare plan at issue in this case. (Mem. of Fact and Law

in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Supp.") at 1, ECF No. 41-1; Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Supp.") at 2, ECF No. 43-1; *see* First Am. Compl. ("FAC") ¶ 9, ECF No. 14.)  Vulcan Materials Company is the Plan Sponsor and Plan Administrator, and BCBS Alabama is the claims administrator.  (Defs.' Supp. 2; FAC ¶¶ 3–4.)  Because the coverage at issue was employment based, Plaintiff's claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (FAC ¶ 1; Pl.'s Supp. 1.)

The BCBS policy provisions relevant to this case provide that BCBS will cover up to 80% of out-of-network surgeon fees,[1] pursuant to a calculation according to the "allowed amount."  (Pl.'s MSJ Ex. B, ECF No. 42-5 at 52–53.)  The allowed amount may be calculated in several ways, including by basing it on "the negotiated rate payable to in-network providers," "the average charge for care in the area," or "historical data and information from various sources" inclusively listed in the policy.  (*Id.*, ECF No. 42-5 at 83–84.)

From 2010 to 2013, Plaintiff underwent three surgeries administered by an out-of-network provider all attempting to fix Plaintiff's persistent lower back pain.  (Pl.'s Supp. 1.)  The final two surgeries, performed by Dr. Sanjay Ghosh at his San Diego Neurological Associates facility (together, "SDNA"), were intended to diagnose and correct the initial, 2010 surgery.  (*See id.*)  These final two surgeries—one investigatory in 2012 and one corrective in 2013—and SDNA's corresponding services, were not reimbursed in full by BCBS and now form the basis of this suit.  (FAC ¶¶ 10–15.)

There were several discrete charges resulting from each surgery (Pl.'s Supp. 5); each is addressed in turn according to the relevant surgery date.

///

---

[1] An out-of-network provider is one who does not fall within the umbrella of BCBS's "contract[s] with providers to furnish care for a negotiated price."  (Deagon Decl. Ex. A, at 46–47, ECF No. 43-2.)  This often results in higher out-of-pocket expenses for plan members because, by contrast, in-network providers often contract with BCBS at "a discounted rate" in exchange for the peace of mind that they will be fully reimbursed by BCBS.  (*See id.*)

### A. The 2012 Surgery

There were three bills generated from the 2012 surgery. The billed amounts are underlined, and BCBS's reimbursement payments are bolded:

(1) $119,760.80/**$67,199.88**—Grossmont Hospital charges (where the surgery was performed), (Pl.'s MSJ Ex. B, ECF No. 42-2 at 61);
(2) $62,700.00/**$6,465.31**—Dr. Ghosh's surgical fee, (*id.*, ECF No. 42-2 at 62); and
(3) $73,000.00/**$1,119.79**—Felix Regala's surgical assistance fee, (*id.*, 42-2 at 64).

Respectively, these BCBS payments represent approximately 56.1%, 10.3%, and 1.5% of the total amounts billed.

### B. The 2013 Surgery

There were two bills generated from the 2013 surgery. The billed amounts are underlined, and BCBS's initial reimbursement payments[2] are bolded:

(1) $26,400.00/**$2,991.52**—Dr. Ghosh's surgical fee, (*id.*, ECF No. 42-4 at 91); and
(2) $34,400.00/**$370.38**—Amanda Williams's surgical assistance fee, (*id.*, ECF No. 42-5 at 15).

Respectively, these BCBS payments represent approximately 11.3% and 1% of the total amounts billed.

Plaintiff points out that, in total, BCBS reimbursed Dr. Ghosh and the relevant surgical assistants for $14,671.93 of the total $129,400.00 billed—a rate of approximately 11.4%. (Pl.'s Supp. 11.) With the Grossmont Hospital charges added in, BCBS's total reimbursements equal $79,805.81 of the total $316,260.80 billed—a rate of approximately 25.2%.

/ / /

---

[2] BCBS actually ended up paying $1,658.93 more in reimbursement for the two charges related to the 2013 surgery, although it is unclear why BCBS did so. (*See* Pl.'s Supp. at 8.)

4

## II. The BCBS Explanation of Benefits/Denial Letters

Especially relevant to the pending motions for summary judgment are two aspects of the explanation of benefits ("EOB") letters BCBS sent to Plaintiff regarding the reimbursement amounts BCBS paid for the underlying surgeries and services at issue in this case. First, all of the EOB letters that did not fully reimburse SDNA for the billed amounts used only the following language to explain BCBS's reason for only issuing partial reimbursement:

> (1) THE SUBMITTED CHARGE EXCEEDS THE ELIGIBLE CHARGE WHICH IS THE MAXIMUM ALLOWANCE FOR THIS SERVICE.
> (2) OUR RECORDS INDICATE YOU USED AN OUT OF NETWORK PROVIDER, WHICH WILL INCREASE THE AMOUNT YOU MUST PAY OUT OF POCKET. YOU WILL OWE THE DIFFERENCE BETWEEN THE 'SUBMITTED' CHARGE AND THE 'BENEFITS PAID.'

(*E.g.*, Defs.' Suppl. Br. Exs. G, H, I, J, ECF No. 55-1.) Second, in their initial rounds of briefing Plaintiff and Defendants disagreed regarding whether the EOBs contained language advising Plaintiff of her appeal rights. (*Compare* Barker Decl., Ex. D, at 35–36, 38–39, 45–47, ECF No. 46-5, *with* Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") 13, ECF No. 45.) Although BCBS plan members can elect to receive EOBs electronically or by regular mail, in the present case it was initially "unclear whether or not BCBS . . . sent this explanation of benefits electronically or by mail . . . ." (Barker Decl. Ex. D, at 47, ECF No. 46-5.)

Defendants assert that if the EOB is sent by regular mail, then the back side of the document summarizes the member's appeal rights. (*Id.* at 38–39, ECF No. 46-5; *see also* Deagon Decl. 4, Ex. K, ECF No. 55-1.) On the other hand, if the EOB is sent online then down "in the corner . . . [of] your computer screen, it would have a little link that says, 'Your Rights,'" (Barker Decl. Ex. D, at 38–39, ECF No. 46-5), which, once the member clicked through, would open a new page summarizing the member's appeal rights. Plaintiff
///

attached to her filings copies of the online EOBs relevant to this case; notably, these EOBs neither include such a link nor otherwise mention Plaintiff's appeal rights. (*See, e.g.*, Pl.'s MSJ Ex. B, ECF No. 42-2 at 62.)

However, Defendants in their supplemental brief attached: (1) a supplemental declaration by Jan B. Deagon, "Customer Services Manager for BCBS Alabama" during the time period relevant to this litigation; and (2) copies of the EOBs relevant to this action which were maintained "in the books and records of BCBS Alabama . . . ." (Deagon Decl. ¶¶ 1, 6, Exs. G, H, I, J, ECF No. 55-1; *see also id.* Ex. K.) Declarant Deagon notes that "neither Patrick Kojima nor Vablin Kojima . . . ever registered for the 'My Blue Cross' electronic access to information portal with BCBS Alabama, so BCBS Alabama does not have an email address for either of them." (*Id.* ¶ 3.) This means that "all documents communicated to [the Kojimas] by BCBS Alabama" were necessarily "mailed via regular U.S. Postal Service mail, to the following address: Patrick Kojima[,] 1668 Toledo Way, #2[,] Chula Vista CA 91913 . . . ." (*Id.*) This assertion is further substantiated by the attached EOBs, which each list this same California address near the top. (*Id.* Exs. G, H, I, J.) And, as Defendants previously noted, each mailed EOB contained a section on its back side outlining Plaintiff's appeal rights. (*Id.* Ex. K (form language); *id.* ¶ 8 ("[T]he pre-printed language in Exhibit 'K' was on the back side of all four Processed Claim Report forms BCBS Alabama mailed to Patrick Kojima . . . .").)

**III.   The Provider Appeals to BCBS**

BCBS recognizes two discrete types of appeals: (1) member appeals, and (2) provider appeals. Member appeals—labeled "an appeal of an adverse benefit determination" in the BCBS member policy materials—are explained at length in the BCBS policy materials. The appeals section of the BCBS policy materials note that only the member or an authorized representative, who must be so authorized in writing by the member, may validly appeal an adverse benefit determination. (Pl.'s MSJ Ex. B, ECF No. 42-5 at 72–74.) For an appeal to be valid it must be filed within 180 days and submitted in writing to BCBS of Alabama. (*Id.*, ECF No. 42-5 at 73.) The policy further provides

that if an inquiry labeled as an appeal is submitted "without following the rules just described for filing an appeal" then BCBS "will not treat your inquiry as an appeal." (*Id.*, ECF No. 42-5 at 72.)

Separate and apart from member appeals, Defendants assert that provider appeals—never mentioned in the BCBS member policy materials—are "a courtesy offered to providers" and do not fall under ERISA's provisions. (Deagon Dep. 13, ECF No. 46-5.) BCBS alleges that providers must appeal their reimbursement rates—a provider appeal—to their local arm of BCBS, and must appeal their reimbursement rates on behalf of the member—a member appeal, if the provider is so authorized to act on behalf of the member—to the BCBS arm that issued the member's policy. (*See id.* at 17.) Members must always appeal to the BCBS arm that issued their policy. (*See id.*) Finally, the policy notes that the member "cannot file a claim for benefits under the plan in federal or state court (or in arbitration if provided by your plan) unless you exhaust these administrative remedies." (*Id.* at 35.)

SDNA submitted several letters to BCBS of California, each entitled in part "APPEAL FOR VABLIN Y. KOJIMA," then stating that "[t]his appeal is for SD[NA]," and ultimately "request[ing] that you reconsider the claim for additional payment to SD[NA]." (*Id.* Pl.'s MSJ Ex. A, ECF No. 42-1 at 17, 23, 28.) On April 3, 2013—sixty-two days after BCBS issued the relevant EOB—SDNA submitted to BCBS two letters requesting that BCBS reconsider the reimbursement amounts given to Dr. Ghosh and Ms. Regala, respectively, for the 2012 surgery. (*Id.* Ex. B, ECF No. 42-4 at 47.) BCBS of California responded to SDNA forty-three days later, acknowledging receipt of SDNA's earlier letters and stating that "the inquiry has been sent for medical review for possible additional consideration." (*Id.* Ex. A, ECF No. 42-1 at 27.) This was the last communication to either Plaintiff or SDNA regarding these appeals. On August 29, 2013—twenty-three days after BCBS issued the relevant EOB—SNDA submitted to BCBS a request that BCBS reconsider the reimbursement amount given to Mrs. Williams for the 2013 surgery. (*Id.* Ex. B., ECF No. 42-4 at 74.) On September 10, 2013—thirty-

four days after BCBS issued the relevant EOB—SDNA submitted to BCBS a request that BCBS reconsider the reimbursement amount given to Dr. Ghosh for the 2013 surgery. (*Id.*, ECF No. 42-4 at 61, 84.) Neither SDNA nor Plaintiff received any communication regarding these requests.

However, BCBS internal memoranda discloses internal communications regarding Plaintiff's surgery and SDNA's requests. (*E.g.*, *id.*, ECF No. 42-3 at 8, 55; ECF No. 42-4 at 4, 8, 11, 25, 27, 43, 57, 59, 67, 70, 92; ECF No. 42-5 at 1.) These communications included, among others: (1) a note that "this is a provider appeal not a sub appeal" with a corresponding request to "verify since this is a provider appeal that the allowed amounts provided were correct," (*id.*, ECF No. 42-4 at 57); (2) an inquiry marked "Blue2 Claim Appeal" by "Provider on Behalf of Member" with a corresponding answer that "this is a professional reimbursement issue and is not handled by BCBSAL," (*id.*, ECF No. 42-4 at 70); and (3) a note responding to an inquiry on behalf of the primary insured—Mr. Kojima—noting that Mr. Kojima requested "status on claim appeal for svcs on 6/13 . . . [because] he ha[d] not rec'd a resp yet and the prov has not rec'd a resp," and replying to relevant BCBS employees requesting they "advs the appeals on file and refund req on file are for DOS 12/6/12," (*id.*, ECF No. 42-5 at 1).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a party seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Plaintiff in her MSJ puts forth solid arguments both that BCBS's reimbursement rates were unreasonable under any calculation and that BCBS's two separate appeals processes—an explanation of which appears nowhere in BCBS literature—could easily confuse a BCBS subscriber into thinking his provider is appealing on his behalf.[3] However,

---

[3] Plaintiff also argues (1) that the relevant EOBs do not comply with ERISA regulations due to lack of sufficient specificity in the provided reasons for denial of Plaintiff's reimbursement requests, and (2) that BCBS had a duty to assume SDNA's appeals were on behalf of Mrs. Kojima and therefore also "had an affirmative obligation to point this out to Mrs. Kojima and inform her of what was necessary to perfect her appeal." (Pl.'s Supp. 20.) As discussed in Section I, *infra*, the Court need not

because Defendants argue the BCBS policy provisions explicitly require a subscriber to exhaust administrative remedies before filing suit in federal court, and because if Plaintiff did not here exhaust her administrative remedies this suit is improperly before this Court, the Court first addresses this threshold jurisdictional issue.

## I.    Failure to Exhaust Administrative Remedies

In the present case, the controlling Vulcan and BCBS policy clearly states that a member "cannot file a claim for benefits under the plan in federal or state court . . . unless [the member] exhaust[s] . . . administrative remedies." (Deagon Decl. 35, ECF No. 43-4.) Exhaustion under the plan requires that a member or an authorized representative, who must be so authorized in writing by the member, appeal an adverse benefit determination by conforming to the requirements of (1) writing (2) to BCBS of Alabama (3) within 180 days of the underlying adverse benefit determination. (*Id.* at 73.) The policy further provides that if an inquiry labeled as an appeal is submitted "without following the rules just described for filing an appeal" then BCBS "will not treat your inquiry as an appeal." (*Id.* at 72.)

Both Plaintiff and Defendants seemingly agree that Ms. Kojima did not herself appeal. (*See* Pl.'s Opp'n 5–6; Defs.' Reply 2–3.) Given this, Plaintiff argues that because it is "standard practice for medical providers to initiate appeals on their patients [sic] behalf" the SDNA appeals should have been treated as member appeals despite Plaintiff's admission that "Ms. Kojima . . . failed to comply with the requirement . . . that she first fill out the proper form." (Pl.'s Opp'n 19.) However, both the language of the BCBS policy and the Department of Labor ("DOL") regulations specify that only an <u>authorized</u> representative may bring such an appeal, (*see* 29 C.F.R. § 2560.503-1(b)(4)), and to designate an authorized representative under the BCBS policy requires a written authorization by the member. Because in the present case Plaintiff did not by writing

---

reach this argument due to Plaintiff's failure to exhaust her administrative remedies. Further, even if Plaintiff did succeed on these additional arguments the Court would be unable to award the substantive remedy Plaintiff requests. *See* note 4, *infra*, and accompanying text.

authorize SDNA to act on her behalf, Plaintiff's contention here fails.[4]  Plaintiff thus failed to exhaust her administrative remedies before filing suit in federal court.

However, failure to exhaust administrative remedies may in some instances be forgiven.  DOL regulations regarding ERISA require plan administrators, upon issuing any adverse benefit determination, to provide written notice to the claimant of:

(1) The specific reason for the denial;
(2) Specific reference to the pertinent plan provisions on which the denial is based;
(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f).  Specifically, when an adverse benefit determination "fails to explain the proper steps for appeal, the plan's time bar is not triggered."  *See White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan*, 896 F.2d 344, 350 (9th Cir. 1989).[5]

---

[4] Plaintiff argues that not once did BCBS indicate to the Kojimas that the SDNA appeals were being treated as provider rather than member appeals and notes that "[i]t would have been the simplest thing for someone at BCBS of Alabama to have mentioned, even in passing, that [Plaintiff] needed to fill out its form in order to have the appeals considered."  (Pl.'s Opp'n 20.)  This may well be true, and the Court is indeed troubled by the internal BCBS communication on August 22, 2014 noting that Mr. Kojima inquired about the "status on claim appeal for svcs on 6/13 . . . [because] he ha[d] not rec'd a resp yet and the prov has not rec'd a resp . . . ."  (Pl.'s MSJ Ex. B, ECF No. 42-5 at 1).  This would seem to indicate that at least one BCBS employee had notice that the Kojimas might have thought SDNA's appeals applied to them as well.  However, the language of both the relevant policy and the EOB Appeals Sections were clear regarding all of the requirements to appeal an adverse benefit determination, including that any designation to an authorized representative had to be in writing.  (*E.g.*, Defs.' Suppl. Br. Ex. K, ECF No. 55-1).  Accordingly, while the employees involved in the August 22, 2014 communication may have acted harshly, BCBS's EOBs and appeals policy both comply with relevant ERISA provisions.

[5] This appeals-rights-specific holding could arguably be expanded to encompass any inadequate notice, including technical, rather than substantive, violations of the relevant ERISA provisions.  *See White*, 896 F.2d at 350 (labeling opinion's Section III—containing the above-quoted holding—as "Inadequate notice did not trigger the 60-day time bar" and Section III immediately following the previous section's description of all the ways in which the notice at issue was inadequate).  However, such an expansion would almost certainly run afoul of a separate strand of Ninth Circuit case law.  *See, e.g.*, *Hancock v. Montgomery Ward Long Term Disability Tr.*, 787 F.2d 1302, 1308 (9th Cir. 1986) ("Substantive remedies

This comports with the Ninth Circuit's general view regarding ERISA and the corresponding DOL regulations as requiring "a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).

Accordingly, in the present case the Court may validly consider Plaintiff's claims if BCBS's notice to Plaintiff of her appeal rights was deficient. Prior to the supplemental briefing the record was both too ambiguous and too sparse for the Court to render a decision on this issue. Defendants claimed that the EOBs "sent to plaintiff's spouse, the plan participant, included notification about plaintiff's appeal rights. As part of the EOB form, on the back side of <u>the hard copy sent to the member</u>, <u>a page describing member's appeal rights was produced and testified about</u> [(Exhibit 11)]." (Defs.' Opp'n 8 (emphasis added).) Contrastingly, Plaintiff claimed that "the Exhibit 11 form is actually describing some other type of EOB than the ones sent to Ms. Kojima," and notes that the online EOBs in Plaintiff's disclosures "do not appear to be incomplete; they each state how many pages they include, and all the pages are accounted for in the Record . . . ." (Pl.'s Reply 4.) Further underscoring this conflict, the witness introducing Exhibit 11 was asked whether in the present case "BCBS of Alabama sent t[he relevant] explanation of benefits electronically or by mail" and responded that "[i]t was sent one way or the other, but I don't know which way without referring to the contract." (Deagon Dep. 47.)

However, Defendants' Supplemental Brief has now resolved this factual dispute. As noted above, Defendants attached to their Supplemental Brief both the specific EOBs—

---

are available for procedural defects under ERISA only when the defects 'caused a substantive violation or themselves worked a substantive harm.'" (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985)); *Parker v. BankAmerica Corp.*, 50 F.3d 757, 768 (9th Cir. 1995) (noting that "[o]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy" (citing *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1984), *cert. denied*, 474 U.S. 865 (1985))). Thus, although in the present case Plaintiff's MSJ could be correct that the BCBS EOBs' cursory reasoning behind the adverse benefits determinations was inadequate under ERISA, it would be hard if not impossible to find substantive harm for this procedural violation given that Plaintiff did not appeal those determinations.

rather than merely form EOBs—sent to Plaintiff, and the Deagon Declaration verifying that Plaintiff had not signed up for electronic receipt of the EOBs. This leaves regular U.S. Postal Service mail as the only possible way by which the Kojimas could have received the EOBs, a conclusion that is bolstered by the inclusion of the Kojimas' mailing address at the top of each relevant EOB. Further, because each mailed EOB had specific information regarding Plaintiff's appeal rights, there is no longer any genuine issue of material fact concerning whether BCBS's EOBs complied with the ERISA requirements concerning notice and explanation of an insured's appeal rights—they did.

## CONCLUSION

Given the foregoing, the Court concludes that Plaintiff failed to exhaust her administrative remedies, as required by the BCBS plan, and is thus barred from bringing suit in federal court. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES AS MOOT** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: December 8, 2016

Hon. Janis L. Sammartino
United States District Judge